**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LISA LOCURTO,<br>Plaintiff,<br>v.<br>T-MOBILE US, INC.,<br>Defendant. | Civil Action No.<br>21-cv-03032 (MEF) (JRA)<br><br>**OPINION AND ORDER** |

This Opinion addresses two motions—one by the Plaintiff and one by the Defendant—each seeking to bar the other party's witness from testifying at trial, pursuant to Rule 37 of the Federal Rules of Civil Procedure. Dkt. Nos. 160–61. These motions epitomize the proverbial admonition that those who live in glass houses should not throw stones. Yet that is exactly what each party does: each party accuses the other of failing to disclose the identity of a potential trial witness, while each committed the same alleged disclosure violation. Plaintiff Lisa LoCurto ("Ms. LoCurto") moves to bar Diane Arpin ("Ms. Arpin") from testifying at trial for Defendant T-Mobile US, Inc. ("T-Mobile"). Dkt. Nos. 160, 166 (the "Arpin Motion"). Conversely, T-Mobile moves to bar Stephanie Jankowitz ("Ms. Jankowitz"), the sister of Ms. LoCurto, from testifying at trial. Dkt. Nos. 161, 167 (the "Jankowitz Motion") (collectively the "Motions"). Both parties oppose the other's motion. Dkt. Nos. 163, 165. The Court has reviewed the parties' arguments in their submissions and decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b). For the reasons that follow, the Court will deny the Motions and allow both Ms. Arpin's

and Ms. Jankowitz's testimony at trial.

**BACKGROUND AND PROCEDURAL HISTORY**[1]

This action arises from Ms. LoCurto's claims that T-Mobile discriminated and retaliated against her based on a disability and failed to accommodate her. *See generally* Compl., Dkt. No. 1-1. Ms. LoCurto began her employment with T-Mobile on or about February 8, 2016, and, as a Senior Account Services Representative, her responsibilities included driving to different stores within her assigned territory to supervise T-Mobile employees. *Id.* ¶¶ 5, 7. She suffers from a medical condition known as Cervical Dystonia or Spasmodic Torticollis, which "results in neck muscles contracting involuntarily, causing one's head to twist or turn" and can make it "difficult and painful to turn one's head, can cause pain to radiate into the shoulders, results in headaches and is often exhausting and debilitating." *Id.* ¶ 8. The Complaint is unclear as to when Ms. LoCurto was diagnosed with this disability, but she acknowledges in her summary judgment submission that T-Mobile knew of her condition when it hired her. Dkt. No. 101-1 at 2. For about two years, she was able to drive to different locations within her assigned territory. *Id.* But then, in 2018, her territory changed, and Ms. LoCurto alleges that driving long distances or in places like New York City exacerbated her condition. Compl. ¶¶ 8–9, 15–18.

After two accommodation requests were allegedly denied, Ms. LoCurto took a medical leave of absence. *Id.* ¶¶ 16–30. Upon returning to work, Ms. LoCurto claims

[1] The Court assumes the parties' familiarity with the factual and procedural background of this matter given the long history of the case. Therefore, the Court includes only the factual and procedural history necessary to decide the current dispute.

that T-Mobile still refused to provide any accommodation, and as a result, she experienced difficulties performing her duties due to her condition. *Id.* ¶¶ 37–38. On June 15, 2020, Ms. LoCurto received a letter from T-Mobile informing her that her position was being eliminated due to organizational changes and that her employment would be terminated effective August 17, 2020. *Id.* ¶ 41.

**1. <u>The Arpin Motion</u>**

Ms. Arpin is a former T-Mobile employee who supervised Jennifer Lamb ("Ms. Lamb"), a Senior Accommodation Specialist assigned to address Ms. LoCurto's accommodation requests. Declaration of Michael A. Saffer, Esq., Dkt. No. 162 ¶ 5; Dkt. No. 163 at 2. Importantly, Ms. Arpin was involved with addressing Ms. LoCurto's disability accommodation requests. *See* Declaration of Michael Goettig, Dkt. No. 164-1, Ex. B at 19:18–20:12, 128:25–159:16. Ms. LoCurto moves to exclude Ms. Arpin as a trial witness because T-Mobile neither identified her in its initial disclosures, as required under Rule 26, nor in its interrogatory responses. *See generally* Dkt. No. 160.

This issue first came to light when the parties were preparing for the February 20, 2026 final pretrial conference, about four years after fact discovery concluded on December 2, 2022. *See* Dkt. Nos. 53, 155. According to Ms. LoCurto, on February 11, 2026, T-Mobile revealed Ms. Arpin as a potential trial witness for the first time when it exchanged its portion of the draft Final Pretrial Order. Dkt. No. 160-1 at 5. Ms. LoCurto claims that her trial strategy has been "guided by T-Mobile's Rule 26 disclosures and answers to interrogatories[,]" and that the inclusion of Ms. Arpin as

a trial witness would be "unfairly and significantly" prejudicial due to T-Mobile's late-stage disclosure. *Id.* She further asserts that T-Mobile elected to include Ms. Arpin as a trial witness only after the District Judge "cast doubt on whether T-Mobile took sufficient action to meet its legal obligations when considering LoCurto's accommodation request[.]" *Id.* at 6–7; *see generally* Dkt. No. 162, Ex. D. Accordingly, Ms. LoCurto contends that allowing Ms. Arpin to testify would constitute an unfair surprise, would unfairly prejudice her, and would disrupt the trial. Dkt. No. 166 at 6–10.

According to Ms. LoCurto, T-Mobile initially justified its inclusion of Ms. Arpin in the Final Pretrial Order by claiming that "it was not foreseeable or evident that Ms. Arpin was a necessary witness until after discovery had closed and summary judgment was denied." Dkt. No. 160-1 at 6. In its opposition, T-Mobile argues that Ms. Arpin's testimony is necessary to "explain the structure, authority, and responsibilities" of the personnel who handled Ms. LoCurto's accommodation request, particularly in light of Ms. Lamb's pending departure from T-Mobile. Dkt. No. 163 at 8, 10. T-Mobile concedes that it did not identify Ms. Arpin as a potential witness in its Rule 26 initial disclosures or in its interrogatory responses. *Id.* at 3. Nonetheless, T-Mobile argues that allowing Ms. Arpin to testify would not be a surprise or prejudice to Ms. LoCurto because Ms. LoCurto was well aware of Ms. Arpin's identity and her role concerning the accommodation requests. *Id.* at 3, 10–15.

Specifically, T-Mobile notes that Ms. Arpin was referenced "no fewer than fifty

times in the Broadspire documents produced in discovery" by T-Mobile–documents originating from T-Mobile's third-party administrator for handling accommodation requests–which were cited by Ms. LoCurto in her summary judgment briefing. *Id.* at 1–2; *see* Dkt. No. 101-1 at 21–23. Moreover, T-Mobile claims that two months prior to discovery initially closing, Ms. Arpin was referenced "no less than fifteen different times" during Ms. Lamb's deposition. Dkt. No. 163 at 2 (emphasis removed). There, according to T-Mobile, Ms. Lamb identified Ms. Arpin as her immediate supervisor and as "involved in assessing LoCurto's accommodation demands." *Id.* Thus, T-Mobile claims that Ms. LoCurto had sufficient notice that "Ms. Arpin had knowledge related to her claim," and that Ms. LoCurto had opportunities to depose Ms. Arpin prior to the close of discovery or after it was reopened, but she chose to not do so. *Id.* 2–3.

**2. <u>The Jankowitz Motion</u>**

Just as Ms. LoCurto seeks to exclude T-Mobile's witness, T-Mobile moves to exclude as a trial witness Ms. LoCurto's sister, Ms. Jankowitz. *See* Dkt. No. 161-1. T-Mobile alleges that one day prior to the deadline to submit the Final Pretrial Order, Ms. LoCurto identified Ms. Jankowitz as a trial witness who would testify "about her observations of LoCurto's disability; [and] her conversations with LoCurto regarding the pain and suffering that LoCurto was experiencing during the relevant time periods when LoCurto requested reasonable accommodations[.]" *Id.* at 1.

T-Mobile similarly objects to Ms. Jankowitz's inclusion as a trial witness because Ms. LoCurto knew that Ms. Jankowitz had relevant information but failed

to identify her in both her Rule 26 initial disclosures and her responses to T-Mobile's document requests. *Id.* T-Mobile argues that Ms. LoCurto's late disclosure of Ms. Jankowitz has "deprived T-Mobile of any opportunity to investigate, depose, or prepare to rebut her testimony[,]" and that the "resulting prejudice cannot be cured without reopening discovery and delaying trial[.]" *Id.* at 2. T-Mobile claims that Ms. Jankowitz "was not mentioned by name in a single document[]" of Ms. LoCurto's 3,054-page document production or identified in Ms. LoCurto's deposition as an individual with knowledge related to the claims made. *Id.* at 3–4 (emphasis removed). Specifically, T-Mobile claims that it did not seek to depose Ms. Jankowitz because Ms. LoCurto testified at her deposition that she did not discuss the details of the lawsuit with Ms. Jankowitz and could not recall their conversations. Dkt. No. 167 at 4.

Contrary to T-Mobile's representations, Ms. LoCurto argues that her deposition testimony demonstrates that she indeed discussed the lawsuit with friends and family, including her sister, and that nothing prevented T-Mobile from asking additional questions to probe into what Ms. Jankowitz knew about her disability. Dkt. No. 165 at 3, 6–7. Instead, it was when she was asked if she discussed her employment with T-Mobile that she responded that she did not recall. *Id.* at 6–7. Nonetheless, according to Ms. LoCurto, Ms. Jankowitz will not provide new or "surprising" information that would cause T-Mobile to alter its trial strategy. *Id.* at 1, 3–4. Instead, Ms. LoCurto stresses that Ms. Jankowitz's testimony will be merely "corroborative of evidence" that Ms. LoCurto and her treating neurologist, Dr.

Farzana Nanavati, will present at trial. *Id.* As such, she claims that there is no unfair surprise or prejudice to T-Mobile because Ms. Jankowitz will not testify about the lawsuit or Ms. LoCurto's employment with T-Mobile. *Id.* at 1.

**LEGAL STANDARD**

The overarching purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. With that goal in mind, Rule 26(a) requires parties to automatically disclose the identity and contact information of individuals whom they reasonably know are "likely to have discoverable information" or whom they might call as witnesses. Fed. R. Civ. P. 26(a)(1)(A), (a)(3)(A). The parties must adhere to this rule at the very early stages of the discovery process without either side having to make a specific request for initial disclosures. Fed. R. Civ. P. 26(a)(1)(A), advisory committee's notes to 1993 amendment. As the litigation progresses, the parties must supplement their disclosures or discovery responses promptly if they learn that they were incomplete or incorrect in a material way and "if the additional or corrective information has not otherwise been made known" to their adversary. Fed. R. Civ. P. 26(e)(1)(A). This rule streamlines discovery, facilitates trial preparation and settlement, and avoids the proverbial "trial by ambush." *Wachtel v. Guardian Life Ins.*, No. 01-cv-4183, 2005 U.S. Dist. LEXIS 51523, at *9 (D.N.J. Aug. 31, 2005).

When parties fail to follow the letter and spirit of Rule 26, Rule 37 gives the Court discretion to impose sanctions. Rule 37(c) establishes that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party

is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was *substantially justified or is harmless*." Fed. R. Civ. P. 37(c)(1) (emphasis added). "The party who has failed to disclose information bears the burden to show that the nondisclosure was substantially justified or is harmless." *E.M. Sergeant Pulp & Chem. Co. v. Travelers Indem. Co. Inc.*, No. 12-cv-1741, 2015 WL 9413094, at *3 (D.N.J. Dec. 22, 2015) (citing *D & D Assoc., Inc. v. Bd. of Educ. of N. Plainfield*, No. 03-cv-1026, 2006 WL 1644742, at *4 (D.N.J. June 8, 2006)). In determining whether excluding the testimonies of Ms. Jankowitz and Ms. Arpin is warranted under Rule 37, this Court is guided by the Third Circuit's *Pennypack* factors:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977) *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Nicholas v. Pa. State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000) (reiterating the *Pennypack* factors).

The Third Circuit has supplemented the *Pennypack* factors, making "the importance of the excluded evidence" a significant consideration. *LabMD Inc. v. Boback*, 47 F.4th 164, 189 (3d Cir. 2022) ("The importance of the evidence is often the most significant factor.") (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012)); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir.

1997); *Dzielak v. Whirlpool Corp.*, No. 12-cv-0089, 2017 WL 1034197, at *30 (D.N.J. Mar. 17, 2017). At all times, the Court must remain mindful that a Rule 37 sanction resulting in the exclusion of a potentially important witness is an extreme measure, one that should not be imposed lightly. *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14–15; *Santiago v. Bos. Sci. Corp.*, No. 21-cv-11696, 2026 WL 2575488, at *4 (D.N.J. Aug. 31, 2026) (alteration in original) (noting that the "exclusion of critical evidence is an 'extreme' sanction, . . . not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence." (quoting *Pennypack*, 559 F.2d at 905)).

## DISCUSSION

### 1. Ms. Arpin's Testimony

Rule 37 calls for the exclusion of trial witnesses not previously identified in discovery, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Here, T-Mobile was not "substantially justified" in its delayed disclosure, but such delayed disclosure is harmless, and the *Pennypack* factors do not weigh in favor of excluding her testimony. Therefore, the Court will allow Ms. Arpin to be included as a trial witness, but only after Ms. LoCurto has an opportunity to depose her.

A. *Substantial Justification*

There is no justification, much less a "substantial" one, for T-Mobile's clear failure to include Ms. Arpin in its initial or supplemental disclosures. T-Mobile attempts to justify its lack of disclosure by arguing that it was not until after the

summary judgment stage that it became clear that Ms. Arpin's testimony was necessary to explain to the jury a "complete, accurate understanding of Accommodation Specialists' role and responsibilities[.]" Dkt. No. 163 at 10–11. According to T-Mobile, "Ms. Arpin is uniquely positioned to provide that focused, background testimony so the jury can evaluate the evidence in the proper context." *Id.* at 11.

T-Mobile's explanation falls woefully short of "substantial justification." Courts in this District find that there is "substantial justification" when reasonable persons could disagree as to whether the party was required to make a disclosure. *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14 (citing *Fitz, Inc. v. Ralph Wilson Plastics Co.*, 174 F.R.D. 587, 591 (D.N.J. 1997)). Ms. Arpin was a Senior Manager at T-Mobile and, as Ms. Lamb's direct supervisor, she was responsible for reviewing and communicating with Ms. Lamb about Ms. LoCurto's accommodation request. Dkt. No. 163 at 5. Because T-Mobile clearly knew of Ms. Arpin's role with the company and the importance of her testimony, T-Mobile's failure to disclose her identity was not substantially justified.

B. *Prejudice or Surprise to Ms. LoCurto and Ability to Cure*

The Court's analysis does not end just because a party's failure to disclose was unjustified. The Court must still assess whether "the failure to disclose the witness is harmless" or prejudicial and whether any such prejudice can be cured. *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14. "In assessing prejudice, courts 'should not speculate on how the [surprised party] would have used the additional information

disclosed;' rather[,] prejudice exists when the surprised party likely would have conducted discovery differently." *Id.* at *23 (quoting *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-cv-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005)). The 1993 Advisory Committee Notes to Rule 37 state that harmlessness can be established where there is an "inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties[.]" Fed. R. Civ. P. 37, advisory committee's notes to 1993 amendment; *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14. Moreover, the 2000 Advisory Committee Notes to Rule 37 state that where a party has failed to comply with its obligation to supplement under Rule 26(e)(2), "a party should be allowed to use the material that was not disclosed if the lack of earlier notice was harmless[,]" even if the failure to disclose was not substantially justified. Fed. R. Civ. P. 37, advisory committee's notes to 2000 amendment.

Here, Ms. Arpin was identified "fifty times" in documents produced in discovery and referenced "no less than fifteen times" during Ms. Lamb's deposition. Dkt. No. 163 at 12. Ms. LoCurto's counsel "questioned Ms. Lamb about Ms. Arpin, and elicited specific testimony about Ms. Arpin's supervisory role and involvement in the accommodation process – even using correspondence involving Ms. Arpin as exhibits in that deposition." *Id.* Indeed, Ms. Lamb testified that Ms. Arpin was her supervisor, was routinely consulted regarding accommodation requests, and was involved with Ms. LoCurto's accommodation requests. *See* Dkt. No. 164-1, Ex. B at 19:18–20:12, 128:25–159:16.

"A majority of courts and the Advisory Committee Note to Rule 26 agree, . . . that the identity or knowledge of an individual can satisfy the otherwise made known standard if it is disclosed through deposition testimony." *Cap. Health Sys., Inc. v. Veznedaroglu*, No. 15-cv-8288, 2020 WL 13551439, at *3 (D.N.J. Sept. 9, 2020), *aff'd*, No. 15-cv-8288, 2021 WL 1712539 (D.N.J. Apr. 30, 2021) (citations omitted). Where the significance of an individual to the case is "sufficiently clear from the record," *i.e.*, the witness is named at a deposition and in other discovery, they may have "otherwise been made known" under Rule 26. Fed. R. Civ. P. 26(e)(1)(A); *Riya Dev Corp. v. Amguard Ins. Co.*, No. 22-cv-6415, 2024 WL 1329302, at *4 (D.N.J. Mar. 28, 2024); *Holley v. Port Auth. of New York*, No. 14-cv-7534, 2018 WL 11413338, at *3–5 (D.N.J. May 3, 2018). Although the best practice would have been for T-Mobile to disclose Ms. Arpin as a potential witness or someone with discoverable information earlier during discovery, it is clear that Ms. Arpin was not a stranger to Ms. LoCurto.

Under the circumstances of this case, the Court cannot agree with Ms. LoCurto that allowing Ms. Arpin to testify would be tantamount to an unfair surprise or "trial by ambush." *See Riya Dev Corp.*, 2024 WL 1329302, at *4; *Holley*, 2018 WL 11413338, at *3–5 (allowing certain individuals to testify at trial, deeming them disclosed for the purposes of Rule 26 where the opposing parties were "clearly aware of" those individuals and their significance to the case was "sufficiently clear from the record."). Ms. LoCurto does not state how she would have conducted discovery differently or point to any prejudice beyond generalized assertions that her strategy would need to change if Ms. Arpin is allowed to testify. *See Cap. Health Sys., Inc. v. Veznedaroglu*,

No. 15-cv-8288, 2021 WL 1712539, at *3–5 (D.N.J. Apr. 30, 2021) (affirming decision to allow trial testimony where magistrate judge found no harm after plaintiffs argued, generally, that the late disclosure of a witness impaired their defense by not being able to fully investigate witnesses). Yes, it is true that if Ms. LoCurto chooses to depose Ms. Arpin prior to trial that would certainly result in additional litigation expense. But the additional expense of only one deposition, alone, is insufficient to warrant the exclusion of a witness.

Nor is it the case here that allowing Ms. Arpin to testify would potentially result in completely reopening discovery and resubmitting a new motion for summary judgment, as was the case in *Wachtel*. *See* 2005 U.S. Dist. LEXIS 51523, at *28. It does not appear that Ms. Arpin's testimony will address a subject that has not been broached in discovery; rather, T-Mobile proffers that her testimony will address a persistent topic at the heart of this litigation: the role and responsibilities of accommodation personnel. Dkt. No. 163 at 15; *see Webster v. Dollar Gen., Inc.*, 314 F.R.D. 367, 371 (D.N.J. 2016) (finding that because the submissions centered around an issue "long the subject of dispute in this case," there was no "unfair surprise or incurable prejudice in Defendants' proffer of the subject matter"). As such, Ms. Arpin's anticipated testimony should not materially expand discovery or permit T-Mobile to file a new motion for summary judgment.

Further, it is important to keep in mind that the exclusion of evidence "is disfavored and not typically imposed 'absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *IDT Corp. v. GIL*

*Boosidan*, No. 13-cv-1539, 2016 WL 452134, at *3 (D.N.J. Feb. 4, 2016) (citing *Konstantopoulos*, 112 F.3d at 719). Exclusion of testimony is particularly disfavored where a party is aware of the identity and relevance of the witness they seek to exclude. *See Holley*, 2018 WL 11413338, at *3; *IDT Corp.*, 2016 WL 452134, at *4. Any potential prejudice here can be cured by reopening discovery for the limited purpose of the parties completing the deposition of Ms. Arpin. *See Webster,* 314 F.R.D. at 371 (reopening discovery for limited deposition testimony in order to cure prejudice); *see also Eli Lilly & Co. v. Actavis Elizabeth LLC*, No. 07-cv-3770, 2010 WL 1849913, at *9 (D.N.J. May 7, 2010) (finding that prejudice would be cured by allowance of deposition).

Therefore, the Court agrees with T-Mobile that the failure to disclose Ms. Arpin was harmless as she was known to the parties throughout discovery. *See Newman v. GHS Osteopathic, Inc.*, *Parkview Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) (affirming ruling that failure to supply information or disclose in response to interrogatories was harmless where party "knew the names of its witnesses and the scope of their relevant knowledge well before trial"); *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14 ("it would be inappropriate to apply Rule 37's trial testimony exclusion sanction to a Rule 26(a)(1)(A) violation when the undisclosed witnesses' names were, nonetheless, known to all parties and hence harmless.").

C. *Disruption to Trial*

As to the potential disruption of trial, the trial date has not yet been scheduled. Allowing Ms. Arpin to testify at trial would, at most, cause incidental disruption.

*Webster*, 314 F.R.D. at 371 (finding that the incidental disruption, marked by a brief delay in the resolution of the summary judgment motion, was insufficient to justify exclusion). This is not a case where various undisclosed witnesses have been proposed on the eve of trial. *Wachtel,* 2005 U.S. Dist. LEXIS 51523, at *26–27 (where sixteen additional depositions needed to be taken to cure Rule 26 violation, the court noted that this "would significantly disrupt" the proceedings, and ultimately only allowed the testimony of seven witnesses). The Court finds that Ms. LoCurto's argument that allowing Ms. Arpin to testify would require her to "overhaul her direct and cross examinations" is overstated. Dkt. No. 166 at 10. The disruption to the trial will be drastically mitigated by allowing the limited deposition of Ms. Arpin, with ample time before trial. *See Eli Lilly & Co.*, 2010 WL 1849913, at *9–10.

D. *Bad Faith or Willfulness*

Next, the Court must assess whether T-Mobile's non-disclosure of Ms. Arpin as a potential trial witness was willful or in bad faith. *See Pennypack*, 559 F.2d at 904–05. "Bad faith is most often shown through failure [to] provide or disclose information despite repeated requests to do so." *Eli Lilly & Co.*, 2010 WL 1849913, at *10 (citing *In re Mercedes-Benz Anti-Tr. Litig.*, 225 F.R.D. 498, 507 (D.N.J. 2005)). The record is devoid of any evidence that Ms. LoCurto repeatedly requested, yet was not provided, information related to Ms. Arpin's role. Instead, Ms. Arpin's name was consistently referenced in T-Mobile's written discovery. Dkt. No. 163 at 4. While T-Mobile's failure to include Ms. Arpin in its Rule 26 disclosures may have been the result of neglect, there is no evidence that it was done willfully or in bad faith.

E. *Importance of Testimony*

Finally, this Court considers the importance of the evidence proposed for exclusion. *See Pennypack*, 559 F.2d at 904; *see also LabMD Inc.*, 47 F.4th at 189. T-Mobile argues that Ms. LoCurto's claims turn on the jury's understanding of T-Mobile's accommodation process and the responsibilities of its personnel, which are relevant to "a central issue in the case." Dkt. No. 163 at 16. Further, T-Mobile claims that Ms. Arpin's testimony is particularly important "given the Court's comments at oral argument and LoCurto's efforts to adopt the Court's language as part of her case." *Id.* Ms. LoCurto does not address the importance of Ms. Arpin's testimony; however, the parties do not appear to disagree that Ms. Arpin's testimony is highly important to this action. As a result, this factor weighs against exclusion.

Therefore, after consideration of the *Pennypack* factors, the Court concludes that T-Mobile has met its burden of showing that its failure to disclose Ms. Arpin in both its initial disclosure and its discovery responses was harmless. To mitigate potential prejudice or surprises at trial, Ms. LoCurto may elect to depose Ms. Arpin, confined in scope to explaining "the structure, authority, and responsibilities of the personnel who administered the process at issue," including Ms. Arpin's personal involvement with Ms. LoCurto's accommodation requests. Dkt. No. 163 at 10. Such deposition must take place within thirty days of the issuance of this Opinion and Order.

**2. <u>Ms. Jankowitz's Testimony</u>**

With respect to Ms. Jankowitz's proposed testimony, though the Court finds

Ms. LoCurto was not "substantially justified" in her delayed disclosure, the Court concludes that the late disclosure is harmless. The *Pennypack* factors do not weigh in favor of excluding her testimony and, as a result, the Court will allow the inclusion of Ms. Jankowitz as a trial witness, but only after T-Mobile has an opportunity to depose her.

A. *Substantial Justification*

As noted above, Rule 37 provides for the exclusion of undisclosed witnesses, unless the failure to disclose is substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). The Court finds that the late disclosure of Ms. Jankowitz as a trial witness was not substantially justified. While Ms. LoCurto may have long been aware that Ms. Jankowitz—her sister—could be a witness regarding her disability and pain and suffering, she claims that she "first realized the need for Jankowitz's testimony when T-Mobile refused to stipulate in the PTO to the extent of LoCurto's disability during the relevant time periods when she requested reasonable accommodations[.]" Dkt. No. 165 at 8. That explanation defies logic. Ms. LoCurto testified at her deposition that she was having discussions with her sister about the accommodation process and "what was transpiring." Dkt. No. 161-3, Ex. C at 84:19–85:25. Moreover, it bears emphasizing that Ms. Jankowitz is Ms. LoCurto's sister who purportedly witnessed her pain and suffering. It should have been obvious to Ms. LoCurto that Ms. Jankowitz ought to have been included in her initial disclosures. Thus, Ms. LoCurto's failure to disclose was not justified.

B. *Prejudice or Surprise to T-Mobile and Ability to Cure*

As noted above, however, the failure to timely disclose a witness can be harmless where that individual was known to the parties. *See Newman*, 60 F.3d at 156; *Wachtel*, 2005 U.S. Dist. LEXIS 51523, at *14; Fed. R. Civ. P. 37, advisory committee's notes to 1993 amendment. T-Mobile claims that Ms. Jankowitz was unknown to it because Ms. LoCurto not only failed to disclose her identity, but she also never even hinted that her sister had knowledge relating to her disability. Dkt. No. 161-1 at 6–7. As such, T-Mobile claims it could not have planned to depose Ms. Jankowitz. *Id.* at 7. In rebuttal, Ms. LoCurto argues that Ms. Jankowitz's testimony will not alter T-Mobile's trial strategy, as it will be "corroborative" in nature and "consistent with information that T-Mobile has known through the entirety of this case." Dkt. No. 165 at 6 (emphasis removed).

The Court disagrees with T-Mobile. While Ms. Jankowitz's name may not have appeared in discovery as frequently as Ms. Arpin's, T-Mobile clearly knew of her identity and was surely aware she would have relevant information regarding Ms. LoCurto's disability, as well as her pain and suffering. Ms. LoCurto testified at her deposition that she discussed the lawsuit with her "[f]riends and family members," including her sister. Dkt. No. 161-3, Ex. C at 244:1–20. As such, T-Mobile was certainly aware of the existence of some of these communications. Dkt. No. 161-1 at 6–7. Indeed, an exhibit used by T-Mobile at Ms. LoCurto's deposition demonstrated that Ms. LoCurto had been communicating with her sister regarding the accommodation process, specifically forwarding a suggested solution from Allison Glaser, a District Manager for T-Mobile. Dkt. No. 160-1 at 3; Dkt. No. 161-3, Ex. C

at 84:19–85:25. Simply put, Ms. Jankowitz was not a stranger to T-Mobile. T-Mobile was clearly aware of Ms. Jankowitz's identity and reasonably should have known that she possessed relevant information regarding Ms. LoCurto's disability and pain and suffering, and as such, there is no unfair surprise here. *Holley*, 2018 WL 11413338, at *3; *IDT Corp.*, 2016 WL 452134, at *3.

As to the prejudice posed by Ms. Jankowitz's testimony, T-Mobile argues that the prejudice it faces is substantial because it has been deprived of the opportunity to investigate Ms. Jankowitz, test her knowledge and credibility, and prepare rebuttal evidence. Dkt. No. 161-1 at 7. Conversely, Ms. LoCurto avers that Ms. Jankowitz's testimony will corroborate her own testimony as well as Dr. Nanavati's, rather than introduce new evidence; thus, her testimony will not have a significant impact on T-Mobile's trial strategy. Dkt. No. 165 at 3–5.

The Court finds that Ms. LoCurto's failure to disclose Ms. Jankowitz was harmless. The Court is reluctant to find prejudice where the at-issue witness's identity and knowledge are reasonably known. *See Holley*, 2018 WL 11413338, at *3; *IDT Corp.*, 2016 WL 452134, at *3. Indeed, the testimony from Ms. LoCurto's deposition placed T-Mobile on notice of Ms. Jankowitz's identity and potentially relevant knowledge. Dkt. No. 161-3, Ex. C at 84:19–85:25, 244:1–20. The Court notes that T-Mobile's asserted prejudice of being unable to investigate Ms. Jankowitz's knowledge, examine her credibility, or prepare rebuttal evidence, can be cured by a limited deposition of Ms. Jankowitz regarding: (1) her observations of Ms. LoCurto's disability; and (2) Ms. LoCurto's pain and suffering. *See Eli Lilly & Co.*, 2010 WL

1849913, at *9–10; *Webster*, 314 F.R.D. at 371.

C. *Disruption to Trial*

Next, the Court must assess the potential disruption to an orderly and efficient trial posed by Ms. Jankowitz's testimony. *See Pennypack,* 559 F.2d at 904. T-Mobile claims that Ms. Jankowitz's testimony would disrupt the trial by injecting new testimony at this stage of the litigation. Dkt. No. 161-1 at 9. Ms. LoCurto responds that Ms. Jankowitz's testimony will not "ambush T-Mobile at trial" as it will be limited in scope and consistent with evidence provided by Ms. LoCurto thus far. Dkt. No. 165 at 9. More specifically, Ms. LoCurto claims that Ms. Jankowitz's testimony "will be consistent with LoCurto's complaints of pain, exacerbated by driving, that [have] been set forth in her pleading, in her deposition testimony, and in her medical records." *Id.* at 3.

The Court finds that the disruption to trial posed by Ms. Jankowitz's testimony will be minimal. T-Mobile fails to specifically address how Ms. Jankowitz's testimony would cause a disruption. Instead, it makes generalized assertions that Ms. Jankowitz's testimony is disruptive because it is being introduced at the "eleventh hour" and would cause delay. Dkt. No. 161-1 at 9. Yet, as noted above, the trial date has not yet been scheduled. To the extent that T-Mobile argues that Ms. Jankowitz's testimony would cause a disruption by expanding the issues before the Court, this Court disagrees. *Id.* The effects of Ms. LoCurto's disability have been a central issue in this case, and at this point in the litigation, the parties should have ample knowledge relating to Ms. LoCurto's purported pain and suffering. Nevertheless, T-

Mobile will be afforded the opportunity to depose Ms. Jankowitz, which will significantly lessen any potential disruption at trial and allow the parties to prepare their arguments prior to a trial date being set.

D. *Bad Faith or Willfulness*

T-Mobile contends that Ms. LoCurto's failure to disclose Ms. Jankowitz was not inadvertent and reflects willfulness because, as her sister, Ms. Jankowitz was clearly known to her throughout the entirety of the litigation. Dkt. No. 161-1 at 9–10. The Court finds little evidence in the record suggesting that Ms. LoCurto's conduct has been in bad faith. As previously noted, bad faith is shown through a failure to "provide or disclose information despite repeated requests to do so." *Eli Lilly & Co.*, 2010 WL 1849913, at *10 (citing *In re MercedesBenz Antitrust Litig.*, 225 F.R.D. at 507). While T-Mobile points to three instances during her deposition where Ms. LoCurto claimed not to recall certain discussions with her sister (Dkt. No. 167 at 3), this testimony is insufficient to find that Ms. LoCurto concealed Ms. Jankowitz's identity or knowledge. *See Eli Lilly & Co.*, 2010 WL 1849913, at *9. Thus, the Court is unpersuaded by T-Mobile's contentions and finds that this factor weighs against exclusion.

E. *Importance of Testimony*

As to the importance of Ms. Jankowitz's testimony, it will purportedly be corroborative of Ms. LoCurto's and Dr. Nanavati's testimony, providing observations of Ms. LoCurto's disability and the pain that she endured. Dkt. No. 165 at 4–7. Clearly, testimony regarding the pain and suffering endured by Ms. LoCurto is of

substantial significance to the evaluation of Ms. LoCurto's damages. Moreover, as previously emphasized, courts in this District have noted that the exclusion of evidence "is disfavored and not typically imposed 'absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence.'" *IDT Corp.*, 2016 WL 452134, at *3.

Accordingly, the Court's assessment of the record and the *Pennypack* factors weigh against excluding the testimony of Ms. Jankowitz. To mitigate the prejudice or surprise to T-Mobile, the Court will reopen discovery to allow for the deposition of Ms. Jankowitz. Such deposition must take place within thirty days of the issuance of this Opinion.

## CONCLUSION AND ORDER

For the foregoing reasons, both Ms. LoCurto's Motion to Bar (Dkt. No. 160) and T-Mobile's Motion to Exclude (Dkt. No. 161) are **DENIED**; and it is further

**ORDERED** that the parties shall conduct the limited depositions of Ms. Arpin and Ms. Jankowitz within thirty days of the issuance of this Opinion and Order, should they choose to do so; and it is further

**ORDERED** that the scope of Ms. Arpin's limited deposition shall be confined to explaining the structure, authority, and responsibilities of the personnel who administered the process at issue, including Ms. Arpin's personal involvement with Ms. LoCurto's accommodation requests; and it is further

**ORDERED** that the scope of Ms. Jankowitz's deposition shall be confined to her observations of Ms. LoCurto's disability and Ms. LoCurto's pain and suffering.

HON. JOSÉ R. ALMONTE
UNITED STATES MAGISTRATE JUDGE

Dated: September 30, 2026